OPINION OF THE COURT
Aaron E. Klein, J.
In this CPLR article 78 proceeding petitioner, John J. Fahey (Albany County Commissioner of Social Services, hereinafter *1100 "Fahey”) seeks to annul decisions by respondent, Philip L. Toia (New York State Commissioner of Social Services, hereinafter "Toia”) made after fair hearing conducted on July 19, 1976, that 12 respondents Medicaid applicants (Anna Boissoneault, Susan Bradley, Frances Capallo, Joseph Davies, Helen De Fazio, Ester Hartman, Katherine Hopkinson, Anna McCarthy, Marie Nadeau, Mary O’Brien, Catherine Ogden, and Joseph Somma, hereinafter "applicants”) are Rensselaer, not Albany County residents for purposes of fixing financial responsibility for Medicaid payments.
Petitioner Fahey’s amended petition, dated June 29, 1977, contains 109 paragraphs, and requests the following relief in the form of a judgment:
(1) Annulling and reversing respondent Toia’s fair hearing decisions concerning respondents Boissoneault, Bradley, Capallo, Davies, De Fazio, Hartman, Hopkinson, McCarthy, Nadeau, O’Brien, Ogden, and Somma.
(2) Finding that respondents Medicaid applicants were residents of Rensselaer County and not Albany County.
(3) Finding that respondent Medicaid applicants are the responsibility of the Rensselaer County Department of Social Services and not the Albany County Department of Social Services.
(4) Ordering the Rensselaer County Department of Social Services and respondent Beaudoin provide retroactive public assistance including Medicaid to all respondent Medicaid applicants going back to June 1, 1976.
(5) Ordering the New York State Department of Social Services and respondent Toia to reissue decisions to respondent Medicaid applicants listed in relief paragraph (1) in line with the above relief and to promptly enforce said decisions.
(6) Ordering respondent Toia and the New York State Department of Social Services, and respondent Beaudoin and the Rensselaer County Department of Social Services to reimburse the Albany County Department of Social Services and petitioner Fahey all amounts paid for the support, care and assistance to respondent Medicaid applicants since June 1, 1976 as a result of aid to continue orders and fair hearing decisions in these matters.
(7) Ordering respondent Toia and the New York State Department of Social Services to comply with 18 NYCRR 358.18 and issue all fair hearing decisions involving the Al *1101 bany County Department of Social Services now and in the future as promptly feasible and within 90 days from the date of the request for the fair hearing.
(8) Ordering respondent Toia and the New York State Department of Social Services to comply with 18 NYCRR 358.17 (a) and make all records of fair hearings available upon request for examination by representatives of the Albany County Department of Social Services when the Albany County Department of Social Services is a party to said hearings and to define "reasonable time” to mean within 30 days of the request to examine.
(9) Declaring that residency attaches (absent proof to the contrary) in adult domiciliary care facilities, homes and other various residential type facilities which are licensed by the State Board of Social Welfare and not licensed by the New York State Department of Health; and where the residents are free to come and go at will.
Respondent, John R. Beaudoin, is the Rensselaer County Commissioner of Social Services.
The facts necessary for determination of this CPLR article 78 proceeding are these:
(1) Between 1970 and 1975 numerous Albany County residents including the 12 Medicaid applicants described above were placed in St. Vincent’s Home, Little Sisters of the Poor, City of Troy, Rensselaer County, New York.
(2) St. Vincent’s Home in Troy was a private incorporated home for the aged, certified to operate by the New York State Board of Social Welfare. The 12 Medicaid applicants entered Saint Vincent’s Home as private paying patrons.
(3) While detailed facts with regard to the separate situation of each applicant differ, the differences do not affect legal issues raised in this proceeding.
(4) After entering St. Vincent’s Home in Rensselaer County the applicants filed formal requests for Medicaid payments from Albany and Rensselaer Counties.
(5) Both Albany and Rensselaer Counties rejected the applications: (i) Albany County’s rejections were based on the grounds that the applicants were Rensselaer County residents (ii) Rensselaer County’s rejections were based on the grounds the applicants were Albany County residents.
(6) Sometime in the fall of 1976 the applicants moved from St. Vincent’s Home to Our Lady of Hope Residence, Little *1102 Sisters of the Poor on 1 Jeanne Jugan Lane in Latham, Town of Colonie, Albany County, New York, which is licensed by the New York State Department of Health. St. Vincent’s Home closed sometime after the applicants left the residence.
(7) The denials of assistance caused the applicants to request a fair hearing to determine whether Albany or Rensselaer County is responsible for their assistance payments.
(8) Following a fair hearing on July 19, 1976 respondent Toia rendered a decision in which he determined that the applicants were Albany County residents.
DECISION
This court observes that its function in this article 78 proceeding is not to substitute its judgment for that of the agency being reviewed, but merely to determine whether (i) the agency acted in an arbitrary, capricious, unreasonable, manner, (ii) inconsistent with law, (iii) without rational basis, or (iv) whether substantial record evidence exists to support the agency determination (see, e.g., Matter of Pell v Board of Educ., 34 NY2d 222, 231; Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 520; Matter of Zissels v Dumpson, 52 AD2d 518; Matter of Kayfield Constr. Corp. v Morris, 15 AD2d 373, 378).
The sole issues raised by petitioner Fahey are (1) whether subdivision (b) of section 118 of the Social Services Law is properly applied in determining residence for purposes of responsibility for public assistance, and (2) whether application of section 62 (subd 5, par [d]) of the Social Services Law changes the determination that Albany and not Rensselaer County is responsible for what appears to be requests for both medical and nonmedical assistance by the applicants.
Apparently upon leaving Albany County the applicants (with one or two exceptions) became private paying residents of a private nonprofit home in Rensselaer County. While' in the Rensselaer County home the applicants became public charges.
Legally this court begins with the Matter of Contento v Kohinke (42 AD2d 1025) suggestion that the determination of residence is not susceptible to "uniform definition wherever it appears in legislation, but must be construed in relationship to the particular statute involved (28 C.J.S., Domicile, § 2).”
Given that the entire system of government financial and in *1103 kind assistance to those members of society not able to care for themselves is a legislative expression of man’s instinctive charitable impulse, the statutes and regulations governing that system, are, similar to the tax laws and regulations, perhaps best left to logical legal rationalization consistent with literal interpretation, where such interpretation is possible.
Objective review of sections 62 and 118 of the Social Services Law reveals that within the language of these sections there appears to be an intelligent clear expression that a person’s residence does not change upon his mere removal to a public institution or incorporated private institution (Social Services Law, § 118, subd [b]), and, an unclear and poorly drafted statement concerning which "public welfare district, town or city” is responsible for either medical or nonmedical assistance localities (Social Services Law, § 62, subd 5, par [d]).
It appears certain that legislative enactments such as section 62 of the Social Services Law which is drafted with multiple sections, subdivisions, and paragraphs within those subdivisions which set up different time periods and guidelines for different classes of persons, with different illnesses, who receive different types of public assistance, from different species of organizations and institutions, to determine which locality is fiscally responsible for the assistance, is certain to produce nonuniform determination of facially similar cases (see, e.g., Matter of Corr v Westchester County Dept. of Social Servs., 33 NY2d 111; Matter of Howard v Wyman, 28 NY2d 435; Matter of Casey v Lavine, 54 AD2d 250; Matter of Zissels v Dumpson, supra; Matter of Travis v Lavine, 45 AD2d 389).
Legal rules to govern public assistance should clarify, not confuse, such issues as which locality is responsible for public assistance.
This court takes as a benchmark in this case Matter of Corr v Westchester County Dept. of Social Servs. (33 NY2d 111, supra) where then Associate Judge Breitel grappled with a host of complicating public policy considerations in determining that a claimant then an 89-year-old woman, who lived in New York from 1915-1962, in New Jersey from 1962 to 1971, and moved back to New York State in 1971 and remained there until the 1973 date of decision was entitled to receive medical assistance as a New York resident.
This case differs from Corr (supra) in that the question is *1104 not one of New York State residence, but rather residence in a given county within New York State.
The court finds that given the relatively long period of residence in Albany County, the relatively short period of residence in Rensselaer County, and the fact that the applicants left Albany County for a relatively short period of time, the New York State Commissioner of Social Services did not act in an arbitrary, capricious or unreasonable manner in determining that the applicants were Albany County residents.
The petition is, therefore, denied in the relief requested in its wherefore clause paragraphs 1, 2, 3, 4, 5, 6, and 9.
The petition is granted insofar as it requests that the New York State Commissioner of Social Services comply with the time limits and procedures specified in 18 NYCRR 358.17 and 358.18 governing fair hearings (paragraphs 7 and 8 of the petitioner’s wherefore clause).