OPINION OF THE COURT
Eli Wager, J.
This motion by plaintiff for an order consolidating the *190 two actions and for summary judgment against either or both defendants, and the cross motions of each of the defendants for judgment dismissing the complaint in their respective actions are determined as follows:
Plaintiff Westbury school district seeks reimbursement for the cost of tuition for a foster child, one Cheryl Thomas, pursuant to section 3202 (subd 5, par a) of the Education Law, which provides for the distribution of the cost of educating indigent children among the school districts of this State (see Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283). This child’s mother, Inell Thomas, was confined to the Bedford Hills Correctional Facility at Bedford Hills, New York, when the child was born on June 27,1965. The mother, immediately prior to her incarceration, resided for several months in 1964 within the Amityville Central School District. She remained in prison until January 5, 1970 and has thereafter not returned to live in Amityville.
The Nassau County Department of Social Services assumed responsibility for the support and maintenance of Cheryl on February 16, 1966, and ever since, has had her in their charge. It appears that the child was placed in foster care in Westbury at the age of eight months and has received her education within the schools of the plaintiff Westbury school district.
In each of the two actions Westbury pleads that from January 1, 1974 to June 30, 1978, Cheryl received her education in Westbury and that the cost of tuition, computed pursuant to the formula established by the Commissioner of Education is $4,900.43. In the Amityville action, two other Westchester County school districts and the County of Nassau are named defendants. The actions have been discontinued as against all but Amityville, Bedford Hills and the County of Nassau.
Defendant Amityville in its answer denies responsibility for the payment of tuition, counterclaims against the plaintiff for the cost of educating an unrelated child, which claim has since been discontinued, and cross-claims against its co-defendants. Defendant Bedford Hills denies liability for the payment of tuition, asserting as an affirmative defense that neither the infant nor her mother were residents of *191 the Bedford Hills school district by virtue of the mother’s incarceration. Defendant County of Nassau denies that its assumed custodial relationship to the child subjects it to liability for the payment of tuition.
The question posed, therefore, is: to whom falls the responsibility for providing this child, Cheryl Thomas, with a free public school education which is her constitutional right (NY Const, art XI, § 1) ?
Plaintiff argues first that since the child’s inmate mother elected to retain the newborn child in the institution with her during her early months as authorized by subdivision 2 of section 611 of the Correction Law, the child acquired a legal residence in the Bedford Hills school district, which embraces the institution. Of course, a newborn child acquires the residence of its custodial parent, in this case the mother. Was the mother a resident of Bedford Hills Central School District while a prisoner of the State? The Court of Appeals found such contention “preposterous”- in 1894 (People v Cady, 143 NY 100, 106) holding that prison “is a place of confinement for all except the keeper and his family” and that no residence is acquired there by virtue of involuntary incarceration. The voluntary relinquishment of a prior residence and the voluntary establishment of a new place of abode, albeit institutional, is an essential ingredient in a determination of residence or domicile. The freedom of choice, to come or go at one’s whim or pleasure, at one’s own expense or at the expense of others made for one’s benefit are bona fide elements of determining residence (Matter of Corr v Westchester County Dept. of Social Servs., 33 NY2d 111; Matter of Casey v Lavine, 54 AD2d 250; Matter of Seitelman v Lavine, 36 NY2d 165; see, also, 17 NY Jur, Domicile and Residence, § 36).
Regrettably, the statute at bar, section 3202 (subd 5, par a) of the Education Law, has given rise to litigation between school districts, a fact on which we previously commented in Matter of Brown v Union Free School Dist. No. 8 (88 Misc 2d 755, 759). Disputes between municipalities centering on financial responsibility for providing government assistance have become commonplace in our courts (Fahey v Toia, 91 Misc 2d 1099) as statutory enactments *192 have extended governmental activity into wider areas of social concern (see Social Services Law, § 62, subd 5).
This court is persuaded that defendant Bedford Hills Central School District never acquired responsibility for the education of Cheryl Thomas by virtue of her having been born within the copfines of the Bedford Hills Correctional Facility. The cross motion of defendant Bedford Hills to dismiss the complaint against it is granted.
Turning to the action against Amityville, the critical point in time at issue is the residence of Cheryl Thomas “at the time the social services district * * * assumed responsibility for the support and maintenance of such pupil” (Education Law, § 3202, subd 5, par a). That point is clearly established by the action of the Nassau County Department of Social Services which took control of Cheryl Thomas, as a public charge, on February 16, 1966. On that date Cheryl’s mother was an inmate in the Bedford Hills Correctional Facility. However, her legal residence, for the purposes of social services eligibility, was Nassau County and more precisely, the Amityville school district.
The Commissioner of Education has considered numerous interdistrict conflicts dealing with the assignment of financial responsibility for the education of children who are public charges. In the Matter of Board of Educ. of Ossining Union Free School Dist. (17 Ed Dept Rep 10), the commissioner credits the determination of the social services agency as controlling on the issue of identifying the “sending district” (see, also, Matter of Board of Educ. of Yorktown Cent. School Dist., 17 Ed Dept Rep 2, 5; Matter of Board of Educ. of Yorktown Cent. School Dist., 17 Ed Dept Rep 8, 9; Matter of Board of Educ. of Yorktown Cent. School Dist., 17 Ed Dept Rep 136, 137; Matter of Board of Educ. of Tarrytown Union Free School Dist., 17 Ed Dept Rep 139; Matter of Board of Educ. of Yorktown Cent. School Dist., 17 Ed Dept Rep 140; Matter of Board of Educ. of Ossining Union Free School Dist., 17 Ed Dept Rep 319).
Here, the certificate of the child’s original residence issued by the Commissioner of Social Services of Nassau County is before the court. The challenge to the commissioner’s determination of Amityville as the “sending dis *193 triet” is not well founded. The commissioner’s determination is properly based upon the fact that the child’s mother was a Nassau County resident within the Amityville school district at the time of her incarceration in Bedford Hills. That residence had not changed at the time of Cheryl’s birth.
Moreover, as to the Amityville claim against the County of Nassau, there is nothing in this record to suggest that the county “assumed responsibility for tuition costs” for its infant charge. The Legislature specifically provided for the payment of tuition for such children by “the school district in which each such pupil resided”. Clearly, the appropriate school district in the case of Cheryl Thomas is defendant Amityville (see Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283, supra; Education Law, § 3202, subd 1).
Plaintiff’s motion for summary judgment against defendant Amityville is granted. The cross motion of defendant Amityville is, accordingly, denied. The cross claim of defendant Amityville against the County of Nassau is dismissed.